1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MARY GROSS, Trustee of Kathryn B.            CASE NO. 12-CV-2478 H (JMA)
     Gross Irrevocable Life Insurance Trust,
12   Dated December 20, 2005,                      **ORDER:**

13                               Plaintiff,        **(1) GRANTING IN PART AND
                                                   DENYING IN PART
14                                                 METLIFE'S MOTION TO
                                                   DISMISS**
15        vs.
                                                   [Doc. No. 19]
16
                                                   **(2) DENYING AS MOOT
17                                                 METLIFE'S MOTION TO
                                                   STRIKE; AND**
18
     METROPOLITAN LIFE                             [Doc. No. 20]
19   INSURANCE COMPANY, N.Y.,
     N.Y., a business entity form unknown;         **(3) DENYING AS MOOT
20   et. al.,                                      JOHN HANCOCK'S MOTION
                                                   TO DISMISS**
21                               Defendants.
                                                   [Doc. No. 21]
22

23

24        On February 8, 2013, Defendants Metropolitan Life Insurance Company, N.Y.,

25   N.Y. and MetLife Inc. (collectively "MetLife") filed a motion to dismiss Plaintiff Mary

26   Gross, Trustee of the Kathryn B. Gross Irrevocable Life Insurance Trust ("Plaintiff")'s

27   first amended complaint ("FAC") and a motion to strike portions of the FAC.  (Doc.

28   Nos. 19-20.) On February 8, 2013, Defendants John Hancock Life Insurance Company,

John Hancock USA, and John Hancock Variable Life Insurance (collectively "John Hancock") also filed a motion to dismiss Plaintiff's FAC. (Doc. No. 21.) On March 11, 2013, Plaintiff filed oppositions to MetLife's motion to dismiss and motion to strike. (Doc. Nos. 27-28.) On March 25, 2013, MetLife filed its replies. (Doc. Nos. 32-33.) On March 26, 2013, the Court took the matters under submission. (Doc. No. 34.) For the reasons below, the Court grants in part and denies in part MetLife's motion to dismiss the FAC, denies as moot MetLife's motion to strike portions of the FAC, and denies as moot John Hancock's motion to dismiss the FAC.

**Background**

Plaintiff alleges that she is the trustee of the Kathryn B. Gross Irrevocable Insurance Trust (the "Trust"), and she is the daughter of Kathryn B. Gross, the deceased Trustor of the Trust, and Sam Gross. (Doc. No. 17, FAC ¶ 1, 16.) Plaintiff alleges that in the early 1990's, her parents, Kathryn and Sam, formed a relationship with Joseph Langlois, Jr., a successful MetLife agent. (Id. ¶ 16.) Plaintiff alleges that by 1996, her parents relied almost entirely on Langlois and MetLife for their financial planning. (Id. ¶ 18.)

Plaintiff alleges that on September 2, 2002, her father, Sam Gross, passed away, and in late 2005, Kathryn Gross–based on the recommendation of Mr. Langlois–used the proceeds from policies covering Mr. Gross's life and other assets to purchase a $695,789.84 immediate annuity from MetLife and a separate life insurance policy with John Hancock. (FAC ¶ 19.) The John Hancock policy carried a death benefit of $1,373,420 and a policy premium of $88,000 per year. (Id.) Plaintiff alleges that because the MetLife annuity paid a lifetime annual income of $88,000, Mrs. Gross was able to use her income from the MetLife annuity to pay the annual premium on the John Hancock life insurance policy; thereby, allowing her children to essential double their money when she passed away. (Id.)

Plaintiff alleges that each year there was only a small window of time to collect the annuity distributions and pay the life insurance premium. (FAC ¶ 20.) Plaintiff

alleges as a result, the John Hancock policy would already be in delinquent status by the time the payments were made. (Id.)  Plaintiff alleges that due to this small window of time, it was Mr. Langlois's custom and practice, which Plaintiff relied on, to call Plaintiff and inform her when and where to send the premium and in what amount. (Id. ¶ 21.)

Plaintiff alleges that between January and June of 2010, Mr. Langlois was in and out of the MetLife downtown San Diego office due to unknown medical issues or disability, and that this situation led to his ultimate termination or separation from MetLife in June 2010.  (FAC ¶ 22.)  Plaintiff alleges that after Mr. Langlois left the company, MetLife failed to place someone else in charge of her mother's account. (Id. ¶¶ 24, 27.) Plaintiff alleges that in December 2010, the John Hancock policy was cancelled, thereby, causing the Trust to lose the $1,373,420 death benefit after making premium payments of nearly $450,000.  (Id. ¶ 21.)  Plaintiff alleges that prior to the time she received the cancellation notice, she was unaware that Langlois and his staff were no longer employed at MetLife or that the John Hancock policy was about to be cancelled.  (Id. ¶ 23.)  Plaintiff alleges that she attempted to reinstate the John Hancock policy, but was unable to do so because of delays cause by MetLife.  (Id. ¶ 26.)  Plaintiff alleges that on May 10, 2012, Kathryn Gross passed away, and to date, no death benefit has been paid to Plaintiff, nor has any premium been refunded.  (Id. ¶ 31.)

On September 11, 2012, Plaintiff filed a complaint in San Diego superior court against Defendants MetLife and John Hancock asserting causes of action for: (1) negligence; (2) negligent misrepresentation; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing.  (Doc. No. 1, Compl.)  On October 12, 2012, Defendants removed Plaintiff's action from state court to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.  (Doc. No. 1, Notice of Removal.)  On November 8, 2012, Defendants MetLife and John Hancock moved to dismiss Plaintiff's complaint.  (Doc. Nos. 7, 9.)  On January 9, 2013, Plaintiff filed a first amended complaint ("FAC"), mooting the motions to dismiss.  (Doc. No. 17.)  The

1 FAC contains the same four causes of action as the original complaint and adds John

2 Langlois, Jr. as a Defendant.  (Id.)

3      MetLife moves to dismiss Plaintiff's claims for negligent misrepresentation,

4 breach of contract, and breach of the implied covenant of good faith and fair dealing.

5 (Doc. No. 19-1.)  MetLife also moves to strike from the FAC Plaintiff's requests for

6 punitive damages and attorneys' fees.  (Doc. No. 20-1.)  John Hancock moves to

7 dismiss Plaintiff's claims for breach of contract and breach of the implied covenant of

8 good faith and fair dealing.  (Doc. No. 21-1.)

9                                    **Discussion**

10 **I.    MetLife's Motion to Dismiss**

11      A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

12      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the

13 pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has

14 failed to state a claim upon which relief may be granted.  See Navarro v. Block, 250

15 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a)(2) requires that a

16 pleading stating a claim for relief contain "a short and plain statement of the claim

17 showing that the pleader is entitled to relief."  The function of this pleading requirement

18 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which

19 it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

20      The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable

21 legal theory," or (2) "insufficient facts under a cognizable legal claim."  SmileCare

22 Dental Grp. v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation

23 omitted).  A complaint survives a motion to dismiss if it contains "enough facts to state

24 a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless,

25 the reviewing court need not accept "legal conclusions" as true.  Ashcroft v. Iqbal, 556

26 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief

27 above the speculative level."  Twombly, 550 U.S. at 555.  It is also improper for the

28 court to assume "the [plaintiff] can prove facts that [he or she] has not alleged."

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  In deciding a motion to dismiss, the court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

B.     Negligent Misrepresentation

In the FAC, Plaintiff brings a cause of action for negligent misrepresentation against MetLife.  (FAC ¶¶ 35-37.)  MetLife argues that Plaintiff's negligent misrepresentation claim should be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard.[1]  (Doc. No. 19-1 at 7-11.)

Under California law, "[t]he elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'"  Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc., 171 Cal. App. 4th 35, 50 (2009) (citation omitted).

Under Federal Rule of Civil Procedure 9, a plaintiff must plead fraud with particularity.  "Rule 9(b)'s particularity requirement applies to state-law causes of action."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).

---

[1] MetLife also argues that Plaintiff has failed to properly plead the causation element of her negligent misrepresentation claim. (Doc. No. 19-1 at 7-9.) Specifically, MetLife argues that Plaintiff's allegations are deficient because she alleges that MetLife's misrepresentations contributed to John Hancock's denial of her reinstatement application, but elsewhere in the FAC, Plaintiff alleges that the reinstatement proceedings were futile given Kathryn Gross's age and medical condition. (Id.) Under Federal Rule of Civil Procedure 8(d), a plaintiff may plead inconsistent facts to support two or more statements of a claim, even within the same count. See Henry v. Daytop Village, 42 F.3d 89, 95 (2d Cir. 1994); Hammond v. Monarch Investors, LLC, 2010 U.S. Dist. LEXIS 66595, at *9 (S.D. Cal. Jul. 2, 2010); Lucas v. City of Visalia, 726 F. Supp. 2d 1149, 1159 (E.D. Cal. 2010).  Therefore, the Court declines to dismiss Plaintiff's negligent misrepresentation claim for failure to properly plead causation.

12cv2478

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." <u>Id.</u> at 1106 (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir.1997)). "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" <u>Id.</u> at 1106 (quoting <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir.1994)).  "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud" are not.  <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989).

In her opposition, Plaintiff argues that Rule 9(b) does not apply to her negligent misrepresentation claim and notes that circuit courts other than the Ninth Circuit have held that Rule 9(b) does not apply to such claims.  (Doc. No. 28 at 5-9.)  Despite what courts in other circuits have held, "[i]t is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); <u>see also</u> <u>Kelley v. Rambus, Inc.</u>, 384 Fed. Appx. 570, 573 (9th Cir. 2010) (dismissing a negligent misrepresentation claim for failure to meet the "heightened pleading standards of Rule 9(b)"); <u>Rankine v. Roller Bearing Co. of Am.</u>, 2013 U.S. Dist. LEXIS 953, at *10 (S.D. Cal. Jan. 2, 2013); <u>but see</u> <u>Petersen v. Allstate Indem. Co.</u>, 281 F.R.D. 413, 418 (C.D. Cal. 2012) (holding that Rule 9(b) does not apply to negligent misrepresentation claims).

Plaintiff also argues that Rule 9(b)'s heightened pleading standard should be relaxed in non-securities cases.  (Doc. No. 28-1 at 6-7.)  The Court disagrees.  The Ninth Circuit has applied Rule 9(b)'s heightened pleading standard to all claims grounded in fraud or sounding in fraud, and not just claims in securities cases.  <u>See, e.g.</u>, <u>Ebeid v. Lungwitz</u>, 616 F.3d 993, 998-99 (9th Cir. 2010) (applying Rule 9(b) to Plaintiff's False Claims Act claim); <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule 9(b) to Plaintiff's state consumer law claims).  Therefore, Rule 9(b)'s particularity requirements apply to Plaintiff's claim for negligent

misrepresentation.

Plaintiff's FAC contains only conclusory allegations of fraud.  Plaintiff alleges that MetLife negligently represented to Plaintiff that the accounts were being monitored properly, that Langlois's staff was on top of things, that John Hancock would reinstate the policy, that Langlois would be notified, and "other similarly false statements." (FAC ¶ 36.)  Plaintiff fails to allege with specificity what specific statements were made, when and where they were made, and who made them.  Therefore, Plaintiff's allegations fail to satisfy the heightened pleading standard of Rule 9(b).  Accordingly, the Court dismisses Plaintiff's claim for negligent misrepresentation.

C.    Breach of Contract

In the FAC, Plaintiff brings a cause of action for breach of contract against MetLife. (FAC ¶¶ 38-46.)  MetLife argues that this claim should be dismissed because Plaintiff has failed to properly plead the existence of a contract between Plaintiff and MetLife.  (Doc. No. 19-1 at 11-13.)

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

Plaintiff alleges that she entered into a contract with Defendants Langlois and MetLife where in return for substantial commissions paid in connection with life insurance purchased from MetLife, MetLife and its agent Langlois agreed to provide the Gross family with financial advice and guidance and to assist the Gross family with all administrative and ministerial functions necessary to carry out their overall financial plan, including the John Hancock policy.  (FAC ¶ 39.)  MetLife argues that these allegations are insufficient to establish that there was a contract between Plaintiff and MetLife because a non-insurance contract between an individual and an agent does not necessarily mean that the insurer–the principal–is bound by its terms.  (Doc. No. 19-1 at 12.)  "The most definitive characteristic of an insurance agent is his authority to bind

his principal, the insurer . . . .  [T]he general rule is that . . . in the absence of notice, actual or constructive, to the insured of any limitations upon such agent's authority, a general agent may bind the company by any acts, agreements or representations that are within the ordinary scope and limits of the insurance business entrusted to him, although they are in violation of private instructions or restrictions upon his authority." R & B Auto Center, Inc. v. Farmers Group, Inc., 140 Cal. App. 4th 327, 344 (2006) (internal quotations and citations omitted).  Plaintiff alleges that Defendant Langlois at all relevant times was an agent and employee of MetLife, and that he was the primary provider of financial advice to the Gross family.  (FAC ¶¶ 4, 16-18, 39.)  There are no allegations in the FAC stating that Plaintiff or the Gross family were ever given notice of any limitations on Langlois's authority.   Therefore, Plaintiff's allegations are sufficient to allege a contract between herself and MetLife.  Accordingly, the Court declines to dismiss Plaintiff's claim for breach of contract.[2]

> D.      Breach of the Implied Covenant of Good Faith and Fair Dealing

In the FAC, Plaintiff brings a cause of action for the tort of breach of the implied covenant of good faith and fair dealing against MetLife.[3]  (FAC ¶¶ 47-54.)  MetLife argues that this claim should be dismissed because this cause of action is only available against an insurer that has breached an insurance contract.  (Doc. No. 19-1 at 13-14.)

California law implies a covenant of good faith and fair dealing in every contract. Carma Developers, Inc. v. Marathon Development Cal., Inc., 2 Cal. 4th 342, 371 (1992).  "The implied covenant imposes certain obligations on contracting parties as a matter of law–specifically, that they will discharge their contractual obligations fairly

---

[2] Although the Court declines to dismiss Plaintiff's breach of contract claim, MetLife may challenge the existence of a contract between itself and Plaintiff through a motion for summary judgment.

[3] It is clear from the complaint that Plaintiff's cause of action is for the tort of breach of the implied covenant of good faith and fair dealing because Plaintiff seeks tort remedies, such as punitive damages, as part of her claim.  See Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1369 (2010) (explaining that only the tort of breach of the implied covenant of good faith and fair dealing allows for the recovery of punitive damages).

and in good faith." <u>Mundy v. Household Fin. Corp.</u>, 885 F.2d 542, 544 (9th Cir. 1989) (citing <u>Koehrer v. Sup. Ct.</u>, 181 Cal. App. 3d 1155, 1169 (1986)); <u>see also</u> <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 349 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."). Because the covenant is a contract term, however, compensation for its breach has almost always been limited to contract rather than tort remedies. <u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654, 684 (1988). An exception to this general rule is in the context of insurance contracts. <u>Id.</u>; <u>see</u> <u>Harris v. Wachovia Mortgage, FSB</u>, 185 Cal. App. 4th 1018, 1023 (2010) ("[T]he tort of breach of the covenant of good faith and fair dealing applies only in the context of insurance contracts.").

Here, Plaintiff does not allege that MetLife breached an insurance contract. Plaintiff alleges that she had an annuity with MetLife, but Plaintiff does not allege that the annuity was breached. (<u>See</u> FAC ¶¶ 19, 39-46.) Plaintiff alleges that MetLife breached its contract to provide the Gross family with financial advice and guidance, but that is not an insurance contract. (<u>Id.</u>) The only insurance contract Plaintiff alleges in the FAC that was breached is the insurance contract with John Hancock, but Plaintiff does not allege that MetLife was a party to that contract. (<u>Id.</u> ¶¶ 19, 43-44.) Therefore, Plaintiff has failed to state a claim for tortuous breach of the covenant of good faith and fair dealing against MetLife.

In her opposition, Plaintiff argues that she may still bring a cause of action for breach of the implied covenant of good faith and fair dealing against MetLife based on the California Court of Appeal's decision in <u>Wallis v. Superior Court</u>, 160 Cal. App. 3d 1109 (1984), because she has sufficiently alleged that there is a "special relationship" between her and MetLife. (Doc. No. 28-1 at 12-13.) In response, MetLife argues that the California Supreme Court's decision in <u>Foley v. Interactive Data Corp.</u> overruled <u>Wallis</u>. (Doc. No. 32 at 9 n.6.)

In <u>Wallis</u>, the California Court of Appeal held that the tort of breach of the

implied covenant of good faith and fair dealing can be extended beyond the insurance contract context if the contracting parties satisfy the following "special relationship" test: (1) the parties are in inherently unequal bargaining positions; (2) there was nonprofit motivation for entering into the contract such as peace of mind, security, future protection; (3) ordinary contract damages are inadequate because they do not require the party in the superior position to account for its actions and they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and necessity places trust in the other party; and (5) the other party is aware of this vulnerability.   160 Cal. App. 3d at 1118.   The <u>Wallis</u> court then specifically held that such a "special relationship" existed in a severance agreement between an employee and employer.   <u>Id.</u> at 1119.

Subsequently in <u>Foley</u>, the California Supreme Court disagreed and held that the employer-employee relationship "is not sufficiently similar to that of insurer and insured to warrant judicial extension" of the tort of breach of the implied covenant of good faith and fair dealing.   47 Cal. 3d at 693; <u>see also</u> <u>id.</u> at 700 & n.42.   The court in <u>Foley</u> did not decide whether the "special relationship" test announced in <u>Wallis</u> was appropriate for determining whether to expand the tort to contexts other than insurance contracts.   <u>Id.</u> at 692; <u>see also</u> <u>Harris v. Atlantic Richfield Co.</u>, 14 Cal. App. 4th 70, 79 (1993) (stating that <u>Foley</u> left open the appropriateness of the "special relationship" test); <u>Copesky v. Sup. Ct.</u>, 229 Cal. App. 3d 678, 689 n.10 (1991) (same).   But, following <u>Foley</u>, California Supreme Court case law "strongly suggests courts should limit tort recovery in contract breach situations to the insurance area."   <u>Freeman & Mills, Inc. v. Belcher Oil Co.</u>, 11 Cal. 4th 85, 95 (1995).   In <u>Freeman</u>, the California Supreme Court held that as a general rule tort recovery is precluded for noninsurance contract breaches.   <u>Id.</u> at 102; <u>see also</u> <u>Harris</u>, 185 Cal. App. 4th at 1023 ("[T]he tort of breach of the covenant of good faith and fair dealing applies only in the context of insurance contracts.").   Therefore, because Plaintiff does not allege that MetLife breached an insurance contract, Plaintiff has failed to state a claim for breach of the

1  implied covenant of good faith and fair dealing.  See id.; Hecimovich v. Encinal School

2  Parent Teacher Organization, 203 Cal. App. 4th 450, 475 (2012) ("To the extent

3  plaintiff is alleging a tort claim [for violation of the covenant of good faith and fair

4  dealing], it fails, as such a tort exists only in insurance contracts.").  Accordingly, the

5  Court dismisses Plaintiff's claim for breach of the implied covenant of good faith and

6  fair dealing.

## II.     MetLife's Motion to Strike

8          Defendant MetLife moves to strike from the FAC Plaintiff's requests for punitive

9  damages and attorneys' fees.  (Doc. No. 20.)  In the FAC, Plaintiff requests punitive

10  damages and attorneys' fees based on her claims for negligent misrepresentation and

11  breach of the implied covenant of good faith and fair dealing.  (Doc. No. 17 at 20; see

12  also Doc. No. 27 at 1.)  Because the Court has dismissed these two causes of action,

13  MetLife's motion to strike is moot.  Accordingly, the Court denies MetLife's motion

14  to strike as moot.

## III.    John Hancock's Motion to Dismiss

16          John Hancock moves to dismiss Plaintiff's claims for breach of contract and

17  breach of the implied covenant of good faith and fair dealing.  (Doc. No. 21-1.)  On

18  March 11, 2013, Plaintiff and Defendant John Hancock filed a joint notice of

19  settlement, stating that the Court need not further consider John Hancock's motion to

20  dismiss.  (Doc. No. 29.)  Accordingly, the Court denies John Hancock's motion to

21  dismiss Plaintiff's FAC without prejudice as moot.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

12cv2478

## Conclusion

For the reasons above, the Court grants in part and denies in part MetLife's motion to dismiss the FAC, denies as moot MetLife's motion to strike portions of the FAC, and denies as moot John Hancock's motion to dismiss the FAC. As to Plaintiff's cause of action against MetLife for breach of the implied covenant of good faith and fair dealing, the Court declines to find that amendment would be meritorious and dismisses that claim with prejudice. See Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 2013 U.S. App. LEXIS 3385, at *34 (2013) ("A district court may deny leave to amend when amendment would be futile."). The Court grants Plaintiff 30 days from the date of this order to amend or cure the deficiencies–if she can–in a second amended complaint.

**IT IS SO ORDERED.**

DATED:  April 11, 2013

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT