1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GROSS, Trustee of Kathryn B. Gross Irrevocable Life Insurance Trust, Dated December 20, 2005,<br><br>                                Plaintiff,<br><br>    vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, N.Y., N.Y., a business entity form unknown; et. al.,<br><br>                                Defendants. | CASE NO. 12-CV-2478 H (JMA)<br><br>**ORDER GRANTING JOHN HANCOCK'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**<br><br>[Doc. No. 36] |

On April 8, 2013, Defendants John Hancock Life Insurance Company, John Hancock USA, and John Hancock Variable Life Insurance (collectively "John Hancock") filed a motion for a good faith settlement determination pursuant to California Code of Civil Procedure § 877.6. (Doc. No. 36.) On May 6, 2013, Defendants Metropolitan Life Insurance Company, N.Y., N.Y. and MetLife, Inc. (collectively "MetLife") and Defendant Joseph Langlois, Jr. filed non-oppositions to John Hancock's motion. (Doc. Nos. 40-41.) A hearing on the matter is currently scheduled for May 20, 2013 at 10:30 a.m. The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determines this matter is appropriate for resolution without oral

1  argument, submits the motion on the parties' papers, and vacates the hearing.  For the
2  reasons below, the Court grants John Hancock's motion for a good faith settlement
3  determination.

### **Background**

5       Plaintiff alleges that she is the trustee of the Kathryn B. Gross Irrevocable
6  Insurance Trust (the "Trust"), and she is the daughter of Kathryn B. Gross, the deceased
7  Trustor of the Trust, and Sam Gross.  (Doc. No. 17, FAC ¶ 1, 16.)  Plaintiff alleges that
8  in the early 1990's, her parents, Kathryn and Sam, formed a relationship with Joseph
9  Langlois, Jr., a successful MetLife agent.  (Id. ¶ 16.)  Plaintiff alleges that by 1996, her
10 parents relied almost entirely on Langlois and MetLife for their financial planning.  (Id.
11 ¶ 18.)

12      Plaintiff alleges that on September 2, 2002, her father, Sam Gross, passed away,
13 and in late 2005, Kathryn Gross–based on the recommendation of Mr. Langlois–used
14 the proceeds from policies covering Mr. Gross's life and other assets to purchase a
15 $695,789.84 immediate annuity from MetLife and a separate life insurance policy with
16 John Hancock.  (FAC ¶ 19.)  The John Hancock policy carried a death benefit of
17 $1,373,420 and a policy premium of $88,000 per year.  (Id.)  Plaintiff alleges that
18 because the MetLife annuity paid a lifetime annual income of $88,000, Mrs. Gross was
19 able to use her income from the MetLife annuity to pay the annual premium on the John
20 Hancock life insurance policy; thereby, allowing her children to essential double their
21 money when she passed away.  (Id.)

22      Plaintiff alleges that each year there was only a small window of time to collect
23 the annuity distributions and pay the life insurance premium.  (FAC ¶ 20.)  Plaintiff
24 alleges as a result, the John Hancock policy would already be in delinquent status by
25 the time the payments were made.  (Id.)  Plaintiff alleges that due to this small window
26 of time, it was Mr. Langlois's custom and practice, which Plaintiff relied on, to call
27 Plaintiff and inform her when and where to send the premium and in what amount.  (Id.
28 ¶ 21.)

Plaintiff alleges that between January and June of 2010, Mr. Langlois was in and out of the MetLife downtown San Diego office due to unknown medical issues or disability, and that this situation led to his ultimate termination or separation from MetLife in June 2010. (FAC ¶ 22.) Plaintiff alleges that after Mr. Langlois left the company, MetLife failed to place someone else in charge of her mother's account. (Id. ¶¶ 24, 27.) Plaintiff alleges that in December 2010, the John Hancock policy was cancelled, thereby, causing the Trust to lose the $1,373,420 death benefit after making premium payments of nearly $450,000. (Id. ¶ 21.) Plaintiff alleges that prior to the time she received the cancellation notice, she was unaware that Langlois and his staff were no longer employed at MetLife or that the John Hancock policy was about to be cancelled. (Id. ¶ 23.) Plaintiff alleges that she attempted to reinstate the John Hancock policy, but was unable to do so because of delays cause by MetLife. (Id. ¶ 26.) Plaintiff alleges that on May 10, 2012, Kathryn Gross passed away, and to date, no death benefit has been paid to Plaintiff, nor has any premium been refunded. (Id. ¶ 31.)

On September 11, 2012, Plaintiff filed a complaint in San Diego superior court against Defendants MetLife and John Hancock asserting causes of action for: (1) negligence; (2) negligent misrepresentation; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. (Doc. No. 1, Compl.) On October 12, 2012, Defendants removed Plaintiff's action from state court to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. (Doc. No. 1, Notice of Removal.) On November 8, 2012, Defendants MetLife and John Hancock moved to dismiss Plaintiff's complaint. (Doc. Nos. 7, 9.) On January 9, 2013, Plaintiff filed a first amended complaint ("FAC"), mooting the motions to dismiss. (Doc. No. 17.) The FAC contains the same four causes of action as the original complaint and adds John Langlois, Jr. as a Defendant. (Id.)

On March 11, 2013, Plaintiff and John Hancock filed a joint notice of settlement, stating that they had reached an agreement to resolve any and all claims against the John Hancock Defendants. (Doc. No. 29.) Plaintiff and John Hancock agreed to settle the

claims for $20,000.  (Doc. No. 36-2, Declaration of H. Joseph Escher III ¶ 3.)  By the present motion, John Hancock moves for the Court to make a good faith settlement determination pursuant to California Code of Civil Procedure § 877.6.  (Doc. No. 36.)

## Discussion

### I.    Legal Standards

A district court sitting in diversity jurisdiction may determine that a settlement is in good faith pursuant to California Code of Civil Procedure § 877.6.  See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060-64 (9th Cir. 2011).  Under section 877.6(a)(1), "[a]ny party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . ."  Cal. Civ. Proc. Code § 877.6(a)(1).  When a settlement is determined by a court to have been made in good faith pursuant to section 877.6, the settlement "bar[s] any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."  Id. § 877.6(c).

"To determine whether a settlement has been made in good faith, California courts consider (1) 'a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability'; (2) 'the amount paid in settlement'; (3) 'the allocation of settlement proceeds among plaintiffs'; and (4) 'a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial.'"  Mason & Dixon Intermodal, 632 F.3d at 1064 (quoting Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal. 3d 488, 499 (1985)).  "Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants."  Tech-Bilt, 38 Cal. 3d at 499.  These factors are to be assessed "on the basis of the information available at the time of settlement."  Id. at 499.  The

burden of proving that a settlement between the parties was not made in good faith is on the non-settling tortfeasor. See Cal. Civ. Pro. § 877.6(d).

**II.  Analysis**

The Court has reviewed the terms of the settlement and concludes that the settlement is in good faith. The settlement amount paid by the John Hancock Defendants is reasonable in light of their defenses to Plaintiff's claims[1] and the stage of this litigation. In addition, there is no evidence of collusion, fraud, or tortious conduct aimed to injure the interests of the other Defendants. The other named Defendants received notice of John Hancocks motion and filed non-oppositions to the motion. (Doc. Nos. 40-41.) Accordingly, the Court concludes that the settlement agreement is in good faith.

**Conclusion**

For the reasons above, the Court grants John Hancock's motion for a good faith settlement determination pursuant to California Code of Civil Procedure § 877.6. The settlement reached between Plaintiff and the John Hancock Defendants is found to be in good faith within the meaning of California Code of Civil Procedure § 877.6, and the Non-Settling Defendants (MetLife and John Langlois, Jr.) are barred from pursing any claims against the John Hancock Defendants as a joint tortfeasor or co-obligor for equitable comparative contribution or comparative indemnity based on comparative negligence or comparative fault.

**IT IS SO ORDERED.**

DATED: May 13, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[1] John Hancock presented evidence, as part of its motion to dismiss or in the alternative for summary judgment, showing that it had provided Plaintiff with notice that the policy would lapse due to the non-payment of premiums prior to cancelling the policy. (Doc. No. 21-4, Declaration of Brian Latcham ¶¶ 4-11 Exs. 2-7; Doc. No. 21-5, Declaration of J.J. Hian-Cheong ¶¶ 3-8; see also Doc. No. 21 at 3-6.)